UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE HYLAK,

    Plaintiff,                                                          Case No. 1:07-cv-421

v.                                                                  Hon. Wendell A. Miles

JEFFREY A. BIESZK (In Individual Capacity),
DUE NORTH SURVEYING, INC. (A Michigan Corporation),
ANN MARIE MORIARTY, and SCOTT KUGLER,

    Defendants.
_____/

ORDER ON PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION,
DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION,
AND DEFENDANTS' MOTION TO STRIKE

This action has its origins in a real property dispute between the *pro se* plaintiff and defendants Ann Marie Moriarty and Scott Kugler.  In his complaint, plaintiff asserts state law claims of trespass and easement against Moriarty and Kugler, his two neighbors.  Plaintiff also asserts state law claims of fraud and breach of statutory duty against Jeffrey Bieszk and Due North Surveying, Inc. ("Due North"), who were apparently hired by Moriarty and Kugler to survey their properties.  The matter is currently before the court on the following motions: (1) a motion by defendants Bieszk and Due North for dismissal under Fed.R.Civ.P. 12(b)(1) (doc. no. 8); (2) a motion by plaintiff – his second one – for preliminary injunction (doc. no. 10); and (3) a motion by defendants Bieszk and Due North to strike plaintiff's pleadings, briefs, and other papers (doc. no. 26).

For the reasons to follow, the court **DENIES** plaintiff's motion for preliminary injunction and defendants' motion to strike, and **GRANTS** the defendants' motion to dismiss.

**I**

Plaintiff owns waterfront property located on Bird Lake in Hillsdale County, Michigan. Plaintiff purchased this property for $1,000 at a tax sale in September, 2004, after it had been forfeited to the Hillsdale County Treasurer for nonpayment of property taxes. All but a small portion of this property is lakebed, submerged under the waters of Bird Lake. The remainder consists of a small beach.

Moriarty and Kugler each allegedly own property adjoining plaintiff's. Plaintiff describes the Moriarty and Kugler properties as "backlots," or "not waterfront." After plaintiff purchased his waterfront property, he offered to sell it to Moriarty and Kugler, who had apparently been using it as a beach and for boat docking purposes, for $70,000. Moriarty and Kugler declined to buy, and at some point – it is unclear when – plaintiff began constructing a plywood fence in order to block his neighbors' access to the waterfront parcel.

Moriarty and Kugler commenced a quiet title action against plaintiff in Hillsdale County Circuit Court, seeking to enjoin him from constructing the fence and from removing their docks or other personal property from the lakefront parcel. Moriarty and Kugler also sought a declaration that they had become the owners through adverse possession of that portion of the lakefront parcel not covered by water. Plaintiff sought summary disposition in his favor, in part on the basis that any unrecorded interests Moriarty and Kugler had in the lakefront parcel were extinguished by the judgment of foreclosure which had granted fee simple title to the Hillsdale

County Treasurer, plaintiff's predecessor in interest. Although the circuit court denied his motion, the decision was reversed on appeal. The appellate court did, however, conclude that Moriarty and Kugler's rights were not extinguished to the extent that their possessory rights before foreclosure constituted a visible easement or right-of-way. Moriarty v. Hylak, No. 262629, 2006 WL 827919, *3 (Mich. Ct. App. Mar. 30, 2006).

      The case was returned to the circuit court, which ultimately entered a judgment of no cause of action rejecting Moriarty and Kugler's claims. The circuit also rejected plaintiff's request to file an untimely counterclaim for an easement over Moriarty and Kugler's properties in order to provide plaintiff access over land to what the court deemed the lakefront "sliver." Plaintiff repeatedly sought reconsideration, seemingly on the basis that certain statements made by the circuit court at trial established legal boundary lines for his property, lines which plaintiff believes are based on inaccurate surveys made by surveyor Jeffrey Bieszk and Due North (presumably at the behest of Moriarty and Kugler). The circuit court denied plaintiff's motions.

      After the state circuit court denied plaintiff's requests for reconsideration, the property dispute continued, ultimately leading to plaintiff's filing the present action. On April 27, 2007, plaintiff filed his complaint in this court, captioned "Complaint for Fraud (Survey Report, Concealing Federal Boundary) and Breach of Statutory Duty (MCL 750.248 and Michigan Public Act 132 of 1970) for Trespass, and for Easement, Providing Ingress and Egress to Riparian Realty, Which is Landlocked." Plaintiff, who lists his address as a post office box in Lansing, Michigan, asserts only state law claims against the four defendants, who include Moriarty, Kugler, Bieszk, and Due North, a Michigan corporation.

      Earlier in the case, the court denied a motion by plaintiff to appoint the United States

3

Marshal for service of process.  The court also denied a motion by plaintiff for a preliminary injunction, seeking enforcement of what he deems to be his property line and granting him an easement across the Moriarty and Kugler properties.  In its order, the court further required plaintiff to file a brief explaining the factual and legal bases for his invocation of federal jurisdiction.  After plaintiff filed his brief on jurisdiction, he also filed his second motion for preliminary injunction.  Bieszk and Due North then filed their motion to dismiss for lack of subject matter jurisdiction and their motion to strike.

**II**

The factors to be considered by a district court in deciding whether to grant a preliminary injunction are well-established: "(1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction."  Washington v. Reno, 35 F.3d 1093, 1099 (6th Cir. 1994).  Although as a general matter none of these four factors are given controlling weight, a preliminary injunction may not be issued where no likelihood of success exists on the merits.  Michigan State AFL-CIO v. Miller, 103 F.3d 1240, 1249 (6th Cir. 1997).

"'Without jurisdiction the court cannot proceed at all in any cause.'"  Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94, 118 S.Ct. 1003, 1012 (1998) (citation omitted).  "The requirement that jurisdiction be established as a threshold matter "'spring[s] from the nature and limits of the judicial power of the United States'" and is 'inflexible and

4

without exception.'"  Id., 523 U.S. at 94-95, 118 S.Ct. at 1012 (citation omitted).  Because a federal court may not rule on the merits of a case over which it does not have subject matter jurisdiction, the court must decide the issue of jurisdiction first.  Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 377 F.3d 592, 594 (6th Cir. 2004), affirmed, 545 U.S. 308, 125 S.Ct. 2363 (2005).  Therefore, more specifically, a motion to dismiss under Fed.R.Civ.P. 12(b)(1) must be decided before any consideration of a motion on the merits can occur.  Moir v. Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir.1990).

"Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion."  Id. (citing Rogers v. Stratton Industries, Inc., 798 F.2d 913, 915 (6th Cir.1986)).  "Moreover, the court is empowered to resolve factual disputes when subject matter jurisdiction is challenged."  Id.  Here, in addition to the pleadings and briefing, the court has reviewed (1) the materials provided by plaintiff with his complaint, and which are considered a part thereof pursuant to Fed.R.Civ.P. 10(c);  (2) portions of the state court record, copies of which have been provided by the defendants and are a proper subject of judicial notice pursuant to Fed.R.Evid. 201(b), see Rodic v. Thistledown Racing Club, Inc., 615 F.2d 736, 738 (6th Cir. 1980) (taking judicial notice that appeal arose from same facts that formed the basis for state court judgment);  and (3) other factual submissions of the parties.

Plaintiff has not alleged that the requirements of 28 U.S.C. § 1332 for diversity of citizenship are satisfied.  Instead, he argues that the court has federal question jurisdiction over this action under 28 U.S.C. § 1331 on two separate bases.  First, and primarily, plaintiff argues that his state law claims "depend on the construction, application and effect of federal statutes,

5

including the (US) Public Land Ordinance of 1785, 1 Laws of the United States 565 (1815), and progeny federal legislation, underlying our modern-day land descriptions and boundaries, including the section lines, which are an essential element of these state law claims." Plaintiff's Brief Explaining the Basis for Jurisdiction ("Plaintiff's Jurisdiction Brief") at 1-2. Plaintiff's primary position is therefore that subject matter jurisdiction exists because his complaint concerns a property boundary established by the federal government before Michigan even became a State. Secondarily, plaintiff argues that the court has federal question jurisdiction over this action because he seeks redress for the deprivation of property rights secured by the United States Constitution, enforceable through 42 U.S.C. §§ 1343 and 1983. The court will address each of these arguments separately.[1]

---

[1] Plaintiff also argues that under 28 U.S.C. § 1367, the court has supplemental jurisdiction over his state law claims. However, plaintiff misunderstands this doctrine. Although supplemental jurisdiction provides an independent basis for federal subject matter jurisdiction over state law claims where none exists otherwise, the court must first have federal jurisdiction over one or more claims in the action. See 28 U.S.C. § 1367(a) ("in any civil action *of which the district courts have original jurisdiction,* the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution") (emphasis supplied). "The federal claim must have substance sufficient to confer subject matter jurisdiction on the court." United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138 (1966). Although Gibbs established the doctrine of "pendent" jurisdiction over certain related state law claims as a matter of federal common law, in 1990 Congress codified the doctrine in 28 U.S.C. § 1367, terming it "supplemental" jurisdiction. Musson Theatrical, Inc. v. Federal Exp. Corp., 89 F.3d 1244, 1254 (6th Cir. 1996). Section 1367 does not create an independent basis for jurisdiction over state law claims absent a substantial federal claim.

**A**

**Land Ordinance of 1785**

Under 28 U.S.C. § 1331, district courts have original jurisdiction of all civil actions "arising under the Constitution, laws, or treaties of the United States."  "A claim falls within this court's original jurisdiction under 28 U.S.C. § 1331 'only [in] those cases in which a well-pleaded Complaint establishes either that federal law creates the cause of action or that the plaintiff[']s right to relief necessarily depends on resolution of a substantial question of federal law.'"  Eastman v. Marine Mechanical Corp., 438 F.3d 544, 550 (6th Cir. 2006) (citations omitted).  Under the well-pleaded complaint rule, federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.  Id.

Although section 1331 is typically invoked by plaintiffs pleading a cause of action created by federal law,  "another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction" has long recognized "that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues."  Grable & Sons, 545 U.S. at 312, 125 S.Ct. at 2366-2367.  This latter doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues[.]"  Id., 545 U.S. at 312, 125 S.Ct. at 2367.  However, the exercise of federal jurisdiction under the doctrine is appropriate "only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331."  Id.  The question is

>does a state-law claim necessarily raise a stated federal issue, actually disputed
>and substantial, which a federal forum may entertain without disturbing any
>congressionally approved balance of federal and state judicial responsibilities[?]

Id., 545 U.S. at 314, 125 S.Ct. at 2368.  "[M]ere reference to a federal statute does not establish federal jurisdiction unless a substantial, disputed question of federal law is a necessary element of a state cause of action."  Michigan So. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc., 287 F.3d 568, 574 (6th Cir. 2002).

As a basis for federal question jurisdiction, plaintiff invokes the Land Ordinance of 1785.  This ordinance, which provided for the survey and sale of the Northwest Territory, "initiated a land-surveying practice that was first applied to the Northwest Territory but that was applied to all territories acquired by the United States thereafter."  Papasan v. Allain, 478 U.S. 265, 269, 106 S.Ct. 2932, 2935 n.3 (1986).  This practice was as follows:

>At the point where the Ohio River crosses the Pennsylvania border, a north-south
>line – a principal meridian – was to be run and a base line westward – the
>geographer's line – was to be surveyed; parallel lines of longitude and latitude
>were to be surveyed, each to be 6 miles apart, making for townships of 36 square
>miles or 23,040 acres. . . .  Each township was to be divided into lots of one mile
>square containing 640 acres. . . .
>     Each of these 1-square-mile lots was called a 'section[.]'

Id. (internal quotation marks and citation omitted).  Here, plaintiff's claims against each of the defendants are based on his allegation that the surveys procured by Moriarty and Kugler are "fraudulent" or at least inaccurate insofar as they do not reflect property boundaries based on "section" lines for which the Land Ordinance of 1785 provides.

Generally, "[a] suit arises under the law that creates the cause of action." American Well

8

Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260, 36 S.Ct. 585, 586 (1916).  Plaintiff's stated claims – on their face – arise under Michigan common and statutory law.  However, as noted above, plaintiff's complaint may still present a federal question if his state law claims implicate a significant federal issue.  But here, the claims do not implicate a significant federal issue.

Even assuming that the Land Ordinance of 1785 has tangential implications in this case involving a boundary dispute, no significant federal issue is presented.  A case may arise under federal law "where an appropriate statement of the plaintiff's cause of action, unaided by any anticipation or avoidance of defenses, discloses that it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of a law of Congress."  Hopkins v. Walker, 244 U.S. 486, 489, 37 S.Ct. 711, 713 (1917).  However, this case does not involve a disputed issue of federal law.   Instead, the case presents what amounts to a mere factual dispute over the physical location of a property line, involving property which plaintiff acquired not from the federal government, but from a county treasurer.  Cf. Grable & Sons, 545 U.S. 308, 125 S.Ct. 2363 (2005) (federal jurisdiction recognized in quiet title action, where defendant acquired title in sale by Internal Revenue Service after seizure of plaintiff's property for tax delinquency).  No allegation is or can be made that the federal government has any interest in the parties' properties involved in this case, or that the Land Ordinance of 1785 plays a substantial role in resolving this controversy.  Moreover, once title to the property in question passed from the United States, presumably long ago, "then that property, like all other property in the state, is subject to state legislation; so far as that legislation is consistent with the admission that the title passed and vested according to the laws of the United States."  Wilcox v. Jackson ex dem.

9

McConnel, 38 U.S. 498, 517 (1839); see also Hoadley v. San Francisco, 94 U.S. 4, 5-6 (1876) (case did not arise under federal law, where property owner was grantee of city, to which title was granted under federal statute). For these reasons, federal jurisdiction does not exist in this action.[2]   It has long been the case that federal courts do not recognize a basis for federal jurisdiction simply because, at some point in the distant past, federal law played some part in events involving the subject matter of a dispute:

> A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends. This is especially so of a suit involving rights to land acquired under a law of the United States. If it were not, every suit to establish title to land in the central and western states would so arise, as all titles in those states are traceable back to those laws.

Shulthis v. McDougal, 225 U.S. 561, 569-570, 32 S.Ct. 704, 706 (1912). The requirement that

---

[2]Plaintiff cites to Green v. Valley, 101 F. 882 (C.C.N.D.Iowa 1900) for the proposition that "a federal question is raised if the action involves the construction, application and effect of surveys made under authority of an act of Congress, including the Public Land Ordinance of 1785 and progeny federal legislation." Plaintiff's Jurisdiction Brief at 2 (emphasis by plaintiff). In that quiet title action, which was initiated in a state court and removed to federal court, the petition for removal alleged that the complainant had both "deraigned" title from an act of Congress and that "the real question in controversy was the construction to be placed on the surveys of the land made under the authority of the acts of Congress." 101 F. at 883. That is not the situation here. This case presents a boundary dispute between private parties, involving the validity of a private survey performed by a surveyor under the authority of state law.

Plaintiff argues that the court in Green relied on Railroad Co. v. Schurmeir, 74 U.S. 272 (1868). Schurmeir, however, was an appeal to the United States Supreme Court from the Minnesota Supreme Court. Current federal law expressly provides for United States Supreme Court jurisdiction over final judgments of state supreme courts by writ of certiorari under certain conditions. 28 U.S.C. § 1257. That law does not apply here to provide a basis for jurisdiction over state law causes of action asserted in a United States District Court. Moreover, in Schurmeir, the complainant had acquired the property in question "from the United States under the antecedent official survey and sale." 74 U.S. at 289. That is not alleged here.

the federal issue in a state law claim must actually be in dispute to justify federal question jurisdiction has a limiting effect.  Grable & Sons, 545 U.S. at 315 n.3, 125 S.Ct. at 2369 n.3.  Where "[t]he most one can say is that a question of federal law is lurking in the background," Gully v. First Nat'l Bank, 299 U.S. 109, 117, 57 S.Ct. 96, 100 (1936), federal question jurisdiction is not present.

>Federal question jurisdiction is defined not broadly, but narrowly, and for good reason:
>
>To define broadly and in the abstract 'a case arising under the Constitution or laws of the United States' has hazards of a kindred order. What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation. One could carry the search for causes backward, almost without end. . . .  Instead, there has been a selective process which picks the substantial causes out of the web and lays the other ones aside. As in problems of causation, so here in the search for the underlying law. If we follow the ascent far enough, countless claims of right can be discovered to have their source or their operative limits in the provisions of a federal statute or in the Constitution itself with its circumambient restrictions upon legislative power.

Id., 299 U.S. at 117-118, 57 S.Ct. at 100 (citations omitted).  Even where it is alleged as an element of a state cause of action that a federal statute has been violated, such an allegation may be insufficiently substantial to confer federal question jurisdiction.  Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 814, 106 S.Ct. 3229, 3235 (1986).  Plaintiff's broad allegation that the Land Ordinance of 1785 established the basis for a survey of the land in question before Michigan became a State does not suffice to establish federal jurisdiction over this property dispute.

**B**

**42 U.S.C. §§ 1343 and 1983**

As noted above, plaintiff also argues that the court has federal question jurisdiction over this action because he seeks redress for the deprivation of property rights secured by the United States Constitution, enforceable through 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

Title 28 U.S.C. § 1343 provides as follows:

> (a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
>
> (1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;
>
> (2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;
>
> (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
>
> (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

Subsections (a)(1) and (2) of 28 U.S.C. § 1343 expressly provide United States district

courts with jurisdiction over civil actions under 42 U.S.C. § 1985.[3]  Under 28 U.S.C. § 1343, district courts also have jurisdiction of actions brought under § 1983.[4]  <u>Rowe v. State of Tenn.</u>, 609 F.2d 259, 261 (6th Cir. 1979).  In addition, and more specifically, § 1343(a)(3) is the jurisdictional counterpart of § 1983.  <u>Berger v. City of Mayfield Heights</u>, 265 F.3d 399, 405 (6th Cir. 2001).

Plaintiff's *pro se* complaint does not assert any claims under the federal civil rights laws; his pleading does not even mention these statutes.  Therefore, jurisdiction is not established under 28 U.S.C. § 1343 for redress of statutory civil rights violations. Moreover, even assuming that the facts alleged in the complaint are true, and disregarding any conclusory statements, there

---

[3]Title 42 U.S.C. § 1985(3) provides, in pertinent part, as follows:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws;  or . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

[4]Title 42 U.S.C. § 1983 provides, in pertinent part, as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

is a serious question whether plaintiff has alleged any facts which would establish jurisdiction under 28 U.S.C. § 1343.

Although plaintiff has not articulated under which provision of § 1985 he intends to pursue relief, his complaint fails to state a claim under any of its provisions. Neither section 1985(1), which prohibits conspiracies to interfere with federal officers in the performance of their duties, nor the first clause of § 1985(2), which prohibits conspiracies to influence parties, witness, or jurors in federal court proceedings, is applicable here. In addition, under both the second clause of § 1985(2), which prohibits conspiracies to interfere with due process in state courts with the intent to deprive persons of their equal protection rights, and § 1985(3), which prohibits conspiracies to deprive persons of their equal protection rights, a plaintiff must allege that there was "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Kush v. Rutledge, 460 U.S. 719, 726, 103 S.Ct. 1483, 1487 (1983); Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798 (1971). Plaintiff's complaint does not assert a claim under § 1985 because there are no allegations, conclusory or otherwise, of either a conspiracy or any class-based motivation with regard to defendants' actions.[5]

---

[5]"Section 1985(3) creates a cause of action for conspiracy to violate civil rights." Center for Bio-Ethical Reform, Inc. v. City of Springboro, 477 F.3d 807, 832 (6th Cir. 2007) (footnote omitted). "To succeed in establishing a § 1985(3) claim, the plaintiff must demonstrate '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" Id. (citations omitted). "A § 1985(3) complaint must 'allege both a conspiracy and some class-based discriminatory animus behind the conspirators' action.'" Id. (citation omitted). "Further, 'conspiracy claims must be pled with some degree of specificity and ... vague and conclusory
(continued...)

Moreover, even if plaintiff had pled a conspiracy to deprive him of his property rights secured by the Fourth and Fourteenth Amendments to the United States Constitution, a claim under 42 U.S.C. § 1983 for deprivation of such rights requires an allegation of state action. E.g., Revis v. Meldrum, 489 F.3d 273, 289 (6th Cir. 2007). "Section 1983 provides a federal cause of action for civil damages against an individual acting under color of state law who deprives another of rights, privileges, or immunities secured by the Constitution and laws." Jones v. Reynolds, 438 F.3d 685, 689 (6th Cir.2006) (quotation marks omitted). Section 1983 does not provide a cause of action for violations of state law, such as those alleged here by plaintiff.

Although local governments can be subject to suit under § 1983, Mertik v. Blalock, 983 F.2d 1353, 1358 (6th Cir. 1993), here plaintiff is not suing any local government officials; instead, he is merely suing private parties. "Under some circumstances, . . . the conduct of private parties may be deemed to be state action when the 'conduct allegedly causing the deprivation of a federal right may be fairly attributable to the State.'" Revis, 489 F.3d at 289 (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937, 102 S.Ct. 2744, 2753 (1982)). However, "[w]hether the conduct may in fact be 'fairly attributed' to the state requires a two-part inquiry. 'First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is

---

⁵(...continued)
allegations unsupported by material facts will not be sufficient to state such a claim.'" Id. (citation omitted).
    Here, plaintiff has not alleged that any of the defendants acted with discriminatory animus based on a constitutionally protected classification; he has not alleged a denial of equal protection. In addition, plaintiff's complaint does not set forth specific allegations supporting a conspiracy claim. Therefore, even if plaintiff had referenced in 42 U.S.C. §§ 1343 and 1985 in his complaint, they do not provide a basis for federal jurisdiction over this action.

responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" Id. The two prongs remain distinct when analyzing the conduct of private parties. Id.

The Sixth Circuit uses three tests to evaluate state action: (1) the public-function test, (2) the state-compulsion test, and (3) the symbiotic-relationship or nexus test. Id. Here, plaintiff's complaint alleges that "local law enforcement"– presumably officers employed by the Hillsdale County Sheriffs' Department – received the Moriarty and Kugler surveys as "legal proof" of the property boundary, obstructing plaintiff from having a fence erected on his property. Complaint, ¶s 26, 26(a); see also Complaint exhibits 30, 33. Under these circumstances, only the nexus test, which focuses on the extent of the relationship between the state and private actors, has possible application. See id. (private parties' alleged participation with deputy sheriff in seizure of plaintiff's property requires only application of "nexus" test). However, in applying this test, the Sixth Circuit has specifically held that a claim based on private party defendants' invocation of a state remedy or procedures does not give rise to state action. Id., 489 F.3d at 291.

Attachments to the complaint, which include correspondence with the Hillsdale County Sheriff, indicate that plaintiff was concerned about being charged with criminal trespass if he should attempt to erect a fence on what he believed to be his property. Although plaintiff does not expressly allege that Moriarty and Kugler were responsible for contacting law enforcement about a potential trespass, this allegation is implicit insofar as plaintiff has alleged that the Moriarty and Kugler properties adjoin his waterfront property. This type of involvement of private parties in enforcing a claim of right, however, does not satisfy the nexus test for state action. Under the circumstances, plaintiff has not made a colorable allegation of state action

sufficient to establish federal question jurisdiction based on a federal civil rights violation.[6]

**III**

Defendants Bieszk and Due North have filed a motion seeking to strike plaintiff's pleading, briefs, and other papers filed in this action. In addition, they and plaintiff have included – in their respective briefing – requests for sanctions under Fed.R.Civ.P. 11.

In their motion to strike, defendants Bieszk and Due North argue that all of plaintiff's filings in this action should be stricken for noncompliance with W.D. Mich. L.Civ.R. 10.3, which expressly provides that "[a]ll pleadings and other papers shall contain the date of signing and the address and telephone number of the signing attorney or pro se party." The defendants argue that plaintiff's papers fail to comply with the rule because plaintiff has not provided either a street address or a telephone number. (The only mailing address plaintiff has provided is a post office box number.)

Local Rule 10.3 mirrors Fed.R.Civ.P. 11(a), which mandates that "[e]very pleading, written motion, and other paper shall be signed" and "shall state the signer's address and telephone number, if any." Fed.R.Civ.P. 11(a) further provides that "[a]n unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party." Here, there is no doubt that both Local Rule 10.3 and Fed.R.Civ.P. 11(a) require plaintiff, as a *pro se* party, to provide his address and telephone

---

[6]It is also not sufficient, for purposes of invoking federal jurisdiction, that plaintiff has alleged that Bieszk is licensed by the state of Michigan. The fact that a business is subject to state regulation does not convert its action into state action for purposes of 42 U.S.C. § 1983. American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 52, 119 S.Ct. 977, 986 (1999).

number on all papers filed with the court. It also appears that plaintiff has violated the rules, insofar as most of his filings – including his complaint – list no telephone number. (Plaintiff has not claimed that he has no telephone.) However, neither Local Rule 10.3 nor Fed.R.Civ.P. 11(a) specifies any particular sanction for the failure to provide an address or phone number, although the practical consequences of such an omission can be severe. Fed.R.Civ.P. 11(a) only provides for the sanction of striking a paper which is unsigned.

The court notes that plaintiff has apparently been receiving mail at the post office box number he has provided on his written papers. The court also notes that plaintiff's two most recent filings have included a telephone number, although his earlier filings did not. (The court has not attempted to verify whether plaintiff may be reached at the telephone number he has provided.) The court will therefore not impose sanctions on plaintiff at this time. However, plaintiff is placed on notice that any future written submissions he makes which do not comply fully with the requirements of Local Rule 10.3 and Fed.R.Civ.P. 11(a) will be rejected for filing.

In their Supplemental Brief in Opposition to Plaintiff's Assertion of Federal Question Jurisdiction, defendants Bieszk and Due North have argued that they are entitled to an award of attorney's fees and costs based on plaintiff's "spurious" invocation of federal question jurisdiction. Not to be outdone, plaintiff has also concluded his brief in opposition to the defendants' motion to dismiss with his own request for sanctions under Fed.R.Civ.P. 11 because, according to plaintiff, "the moving paperwork is filled with statements, which are reckless, inflammatory, inaccurate, incomplete, asserted without evidentiary support and not warranted by law, existing or otherwise." Opposition to Defendants' Motion to Dismiss (unpaginated) at 13.

Fed.R.Civ.P. 11, as amended in 1993, "broadens the scope of attorney obligations but

18

places greater constraints on the imposition of sanctions." Ridder v. City of Springfield, 109 F.3d 288, 293 (6th Cir. 1997), cert. denied, 118 S. Ct. 687 (1998). The 1993 amendments "prescribe specific procedural requirements for the imposition of Rule 11 sanctions," and include language which represents a "conspicuous change from the former version" of the rule. Id. at 294. In particular, Fed.R.Civ.P. 11(c)(1)(A) directs that a motion for sanctions under the rule

> shall be made separately from other motions or requests and shall describe the specific conducted alleged to violate [the rule]. It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

As the court noted in Ridder, the amended version of the rule requires a party seeking sanctions to follow a two-step process: "first, serve the Rule 11 motion on the opposing party for a designated period (at least twenty-one days); and then file the motion with the court." 109 F.3d at 294. Adhering to the amendment's explicit language, the court in Ridder held that "[s]anctions under Rule 11 are unavailable unless the motion for sanctions is served on the opposing party for the full twenty-one day 'safe harbor' period before it is filed with or presented to the court[.]" Id., 109 F.3d at 297.

In this case, neither plaintiff nor the defendants have observed the requirements of Rule 11(c)(1)(A), insofar as they have tacked their requests for sanctions onto other papers instead of filing separate motions or requests. In addition, the parties have not established that they have observed the rule's "safe harbor" period. Under the circumstances, court concludes that neither plaintiff nor the defendants have established that they are entitled to Rule 11 sanctions.

## Conclusion

The court lacks subject matter jurisdiction over this action. For this reason, the court

19

denies plaintiff's motion for preliminary injunction and grants the motion of defendants Bieszk and Due North to dismiss for lack of subject matter jurisdiction. This action is therefore dismissed without prejudice in its entirety. Because this action is dismissed without prejudice, nothing in this decision shall be construed as expressing any opinions on the merits of the claims plaintiff has asserted in his complaint.

The parties' requests for Rule 11 sanctions are denied, for the reasons stated above. The motion of defendants Bieszk and Due North to strike is also denied. Because this action is dismissed, it is not anticipated that plaintiff will be submitting any additional written filings. However, the court nonetheless hereby notifies plaintiff that any further papers he submits for filing with the court will be rejected unless it complies fully with the requirements of Fed.R.Civ.P. 11(a), including the requirement that the paper must state plaintiff's address and telephone number.

So ordered this 2nd day of November, 2007.

/s/ Wendell A. Miles
Wendell A. Miles, Senior Judge